UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALAINA S. o/b/o A.C.D.R., a minor,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

23-CV-00492-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Alaina S.[1] ("Plaintiff") brings this action, on behalf of her minor son, A.C.D.R. ("ACDR"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 10) is denied, and defendant's motion (Dkt. No. 12) is granted.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on ACDR's behalf on July 22, 2020, alleging disability since July 5, 2009. (Administrative Transcript ["Tr."] 125, 271, 296). Her application was initially denied and was denied upon reconsideration. (Tr. 156-170). She then requested a hearing before an Administration Law Judge ("ALJ"). (Tr. 177-80). On March 15, 2022, Plaintiff and ACDR appeared with their attorney at a video hearing before ALJ Lisa Groeneveld-Meijer. (Tr. 78-122). On April 14, 2022, the ALJ issued a decision finding ACDR not disabled. (Tr. 56-77). On March 31, 2023, the Appeals Council denied Plaintiff's request for review, (Tr. 1-7), thereby making the ALJ's decision the Commissioner's final decision. This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

This Court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g), made applicable to SSI claims by 42 U.S.C. § 1383(c)(3), which states that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Pursuant to 42 U.S.C. § 405(g), a court's review is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon correct legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *see Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010). The substantial evidence standard is "a very

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis deleted). As the United States Supreme Court in *Biestek v. Berryhill* explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Id.; see, e.g., Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

587 U.S. ——, 139 S. Ct. 1148, 1154 (2019). Accordingly, if a reviewing court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

II.       *Statutory and Regulatory Standards*

To be considered "disabled" under the Act, a child must show a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether

an SSI claimant under the age of 18 is disabled, the ALJ uses a three-step sequential evaluation. *See* 20 C.F.R. § 416.924(a).

At step one, the ALJ determines whether the claimant is engaging in substantial gainful activity; if so, the claim will be denied without consideration of the claimant's medical condition. 20 C.F.R. § 416.924(a)-(b). If the claimant is not working, the ALJ determines whether the record demonstrates a severe impairment at step two. 20 C.F.R. § 416.924(c). If not, the claim will be denied. *Id.* If there is a severe impairment or combination of impairments, the ALJ proceeds to the third step, where the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of a listed impairment set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P. *See* 20 C.F.R. § 416.924(a), (d). If the impairments do not meet, medically equal, or functionally equal a listed impairment, the ALJ finds the child not disabled. *See* 20 C.F.R. § 416.924(d)(2).

If the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations caused by the child's impairments in six "domains" of functioning to determine whether the functional limitations are disabling. *See* 20 C.F.R. § 416.926a. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). To evaluate age-appropriate functioning within each domain, the ALJ focuses on the child's abilities and limitations; the areas in which the child struggles; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. *See* 20 C.F.R. § 416.926a(b)(2). The ALJ

makes a finding of functional equivalence when a child has either an "extreme" limitation[3] in one domain of functioning or "marked" limitations[4] in at least two domains of functioning. *See* 20 C.F.R. § 416.926a(e).

III.    *The ALJ's Decision*

At step one, the ALJ found that ACDR did not engage in substantial gainful activity. (Tr. 60). At step two, the ALJ found that ACDR had the severe impairments of a traumatic brain injury, asthma, ADHD, and a history of right femur, left wrist (radius), and left ulnar fractures. (Tr. 60). At step three, the ALJ determined that ACDR's impairments were not of a severity that met or medically equaled the severity of any listed impairment. (Tr. 60-62). The ALJ then evaluated functional equivalence, determining that ACDR had marked limitations in one of the six domains: acquiring and using information. (Tr. 63-65). In addition, the ALJ found that ACDR had either no or less than marked limitations in the other five domains: attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. (Tr. 66-71). Because ACDR did not have an "extreme" limitation in one domain of functioning or "marked" limitations in two domains, the ALJ concluded that his impairments did not functionally equal a listed impairment and, thus, he was not disabled. (Tr. 71-72).

---

[3] An "extreme" limitation very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e).
[4] A "marked" limitation seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e).

IV.    *ALJ's Decision is Supported by Substantial Evidence*

The ALJ found that ACDR had a marked limitation in acquiring and using information and either less than marked or no limitations in the remaining five domains. (Tr. 63). Plaintiff argues that the evidence shows that ACDR also had a marked limitation in attending and completing tasks. However, there is substantial evidence to support the ALJ's determination that Plaintiff had less than marked limitations in this domain. Treatment notes showed that the severe symptoms of Plaintiff's brain injury subsided, and his attention and concentration improved. (Tr. 66, 798, 800, 830). October 2020 neuropsychological testing showed average and age-appropriate attention, which suggested that Plaintiff's medication was addressing his attention deficit symptoms. (Tr. 66, 634). Additionally, a December 2020 consultative examination showed only moderately impaired attention and concentration. (Tr. 66, 649).

As the ALJ noted, at the hearing, ACDR testified that he had difficulty paying attention and controlling his anger. (Tr. 66, 92). In a function report that Plaintiff completed on her son's behalf, she said that ACDR did not finish what he started and did not complete his chores most of the time. (Tr. 290). Similarly, the individualized education program ("IEP") report for the 2021-22 school year indicated that ACDR at times struggled with inattention and distractibility when completing daily tasks. (Tr. 354). In addition, ACDR's math teacher noted that he did not always complete his work on his own and missed some class assignments. (Tr. 355). The ALJ also acknowledged that treatment notes showed that ACDR experienced spells of "zoning out" and daydreaming, and that Plaintiff was unable to get his attention. (Tr. 66, 799).

However, the ALJ found that ACDR's subjective complaints were not entirely consistent with the evidence as a whole, which demonstrated less than marked limitation in attention and concentration. (Tr. 64, 67). For example, in the function report Plaintiff completed as part of her application for benefits, she indicated that ACDR was able to keep busy on his own and complete his homework. (Tr. 66, 290). The IEP showed ACDR responded well to on-task focusing prompts and redirection. (Tr. 66, 354). And ACDR's math teacher noted that he took notes and completed assignments when asked. (Tr. 66, 355).

The ALJ also found that treatment notes from Plaintiff's neurologists (Renee Reynolds, M.D., and Mohammad Qasaymeh, M.D.) reflected improvement in ACDR's attention and concentration over time. (Tr. 67). In January 2021, ACDR showed clear speech and intact comprehension and was able to follow high-level commands. (Tr. 67, 797). Dr. Reynolds noted that ACDR's severe symptoms of traumatic brain injury subsided over time, and he had returned to his neurological baseline. (Tr. 798). In February 2021, Dr. Qasaymeh observed well-maintained recent and remote memory and normal attention and concentration. (Tr. 67, 800). Dr. Qasaymeh noted that ACDR showed normal language function and a good fund of knowledge. (Tr. 67, 800). In October 2021, ACDR said that he was no longer having headaches with the increased dosage of Amitriptyline, his sleep was greatly improved with Clonidine, and he was no longer having issues with attention and focus. (Tr. 67, 830). Dr. Qasaymeh noted that ACDR still had episodes of "zoning out," but they were "very rare." (Tr. 67, 830). In addition, his tics were milder as well (Tr. 67, 830). The ALJ properly considered ACDR's improvement with

treatment in assessing Plaintiff's allegations of disabling symptoms. See *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order).

The ALJ also considered the objective evidence. (Tr. 66-67); Social Security Ruling 16-3p ("[O]bjective evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]"). Emily Fields, Psy.D., conducted a neuropsychological assessment in October 2020, noting that the ACDR's reading, writing, and math skills were average to low-average. (Tr. 66, 634). She also noted that ACDR had relative strengths in visual spatial reasoning, working memory, and processing speed. (Tr. 66, 634). Dr. Fields stated that ACDR's sustained attention on testing was average and his observed attention generally was age appropriate. (Tr. 66, 634). Dr. Fields reported that ACDR did not show significant attention impairment on objective assessment while on medication, which suggested that medication was beneficial in addressing his attention deficit. (Tr. 66, 634). Dr. Fields stressed that ACDR had only been recovering from his injury for three months, and it was likely that his cognitive functioning would continue to improve. (Tr. 67, 634). Indeed, during standardized testing of receptive and expressive language in June 2021, ACDR was able to understand most of the information that was verbally presented and follow directions appropriately, and he showed good grammatical skills. (Tr. 66-67, 353).

In addition, the ALJ considered the December 2020 consultative psychiatric evaluation that was conducted by Christine Ransom, Ph.D. (Tr. 66). Dr. Ransom observed only moderately impaired attention and concentration. (Tr. 66, 649). ACDR was unable to do serial threes or serial sevens, but he could count from 1 to 10 and perform simple calculations. (Tr. 66, 649). He showed fluent and intelligible speech, coherent and

goal-directed thought processes, and intact immediate and remote memory. (Tr. 67, 648-49).

Dr. Ransom stated that ACDR had moderate limitations in sustaining concentration and completing age-appropriate tasks, responding appropriately to changes in the environment, and learning in accordance cognitive functioning. (Tr. 66, 649-50). The ALJ found Dr. Ransom's assessment partially persuasive because subsequent treatment records showed improvement in Plaintiff's attentiveness. (Tr. 66).

The ALJ also considered the February 2021 report from Plaintiff's teacher, Julianna Duncan, who checked boxes indicating that ACDR had an "obvious problem" with focusing, refocusing to tasks, completing assignments, and carrying out single and multi-step instructions. (Tr. 331). She also checked boxes indicating that Plaintiff had a "serious problem" in completing work accurately and working at a reasonable pace and finishing on time. (Tr. 331).[5] However, Ms. Duncan indicated that ACDR had no problem waiting to take turns and changing from one activity to another without being disruptive. (Tr. 331). Based on the record as a whole, the ALJ could reasonably find that Plaintiff had less than marked limitations in the domain of attending and completing tasks. (Tr. 66-67); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

Plaintiff argues that the ALJ violated SSR 09-2p, which requires the ALJ to consider all relevant evidence in evaluating a child's functioning. However, that ruling does not require the ALJ to discuss every piece of evidence. *See Cichocki v. Astrue*, 729

---

[5] The form Ms. Duncan completed listed five ratings for each area – (1) no problem, (2) a slight problem, (3) an obvious problem, (4) a serious problem, and (5) a very serious problem. (Tr. 331).

F.3d 172, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision," as long as the ALJ's rationale can be understood based on the record as a whole). Similarly, Plaintiff claims that the ALJ violated SSR 09-4p, which lists factors that an ALJ considers in evaluating a child's ability to attend to and complete tasks. But this list is simply a guide, the ruling does not require an ALJ to develop evidence on each factor.

Plaintiff also complains that the ALJ engaged in "cherry picking" by relying on findings that were adverse to Plaintiff's claim. However, an ALJ's decision must be upheld if it is supported by substantial evidence, even if there is substantial evidence supporting the claimant's position. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order).

Plaintiff notes that ACDR's Nurse Practitioner stated that his headaches occurred two to three times a week and his severe headaches occurred one to two times a month. (Tr. 46).  And Dr. Ransom noted that ACDR would experience interruptions in scheduled activities due to headaches. (Tr. 645). However, the ALJ considered ACDR's headaches and associated symptoms. (Tr. 799). As the ALJ noted, in October 2021, ACDR reported that he was no longer having headaches with medication. (Tr. 67, 830).

Plaintiff also claims that the ALJ did not consider ACDR's absenteeism. However, Plaintiff testified that her son missed 10 days of school three times due to the school's COVID-19 protocols. (Tr. 99). For instance, he missed extended time when both of them had COVID-19, and he also missed extended time because of a headache, as he had not been vaccinated and the school's COVID-19 policy required him to stay home for at least 10 days. (Tr. 100). Plaintiff explained that on one other occasion, ACDR was required to

- 10 -

stay home for 10 days with the "sniffles" because he had not been vaccinated (Tr. 99). It does not appear that ACDR's excessive absenteeism was caused by symptoms stemming from his severe impairments.

Finally, Plaintiff notes that Dr. Ransom assessed a moderate limitation in understanding and following directions and sustaining concentration and completing tasks. (Tr. 649). However, as mentioned above, the ALJ found this opinion only partially persuasive, noting that subsequent treatment records showed improved attentiveness. (Tr. 66, 797-98, 800, 830). Plaintiff claims that this is inconsistent with the ALJ's evaluation of Dr. Ransom's assessment of moderate limitations in learning in accordance with cognitive functioning and responding to change in environment (Tr. 649-50). The ALJ found this opinion persuasive and assessed marked limitations in the domain of acquiring and using information, whereas the ALJ assessed less than marked limitations in the domain of attending and completing tasks despite the moderate limitations Dr. Ransom assessed in these areas. (Tr. 65-67). However, the ALJ based the marked limitations in the domain of acquiring and using information not only on Dr. Ransom's assessment of moderate limitations, but also the subsequent evidence of lower grades and memory difficulties. (Tr. 65, 86-87, 914-28). Similarly, the ALJ based his assessment of moderate limitations in attending and completing tasks not only on Dr. Ransom's assessment, but also Plaintiff's improved attentiveness with treatment. (Tr. 66). Contrary to Plaintiff's assertion, these two findings do not conflict.

The ALJ relied on evidence that a "reasonable mind" would accept as adequate to support the conclusion that ACDR had less than marked limitations in attending and completing tasks. See Biestek, 139 S. Ct. at 1154. Thus, there is substantial evidence to

support the ALJ's conclusion that his ACDR's impairments were not functionally equivalent to any listed impairment. See 20 C.F.R. § 416.924(d). Accordingly. the ALJ's determination that ACDR was not disabled must be affirmed.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied and defendant's motion for judgment on the pleadings (Dkt. No.12) is granted.  The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     March 30, 2026
           Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge